IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JULIUS BROWN,

 *Petitioner*,

 v.

UNITED STATES OF AMERICA,

 *Respondent*.

Criminal Action No. ELH-00-0100

**MEMORANDUM OPINION**

This Memorandum Opinion resolves the "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i) Or, In The Alternative, For Imposition Of A Reduced Sentence Pursuant To Section 404 Of The First Step Act," filed by counsel on behalf of defendant Julius Brown ("Brown").  ECF 444 (the "Motion").  The Motion is supported by 27 exhibits, including a letter from the defendant (ECF 444-1)[1] and several other individuals, as well as medical records for the defendant.

Brown, who is now 71 years of age, has been incarcerated since May 2000.  He is serving a sentence of life plus 30 years for drug trafficking and related offenses, imposed in August 2001 by Judge Andre Davis.  ECF 175.[2]  At the time, that sentence was mandatory.

Brown seeks release in one of two ways:  immediately, based on compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), due to "extraordinary and compelling reasons" or, alternatively, a reduction of his sentence to 24 years, under Section 404 of the First Step Act,

---

[1] In the letter, defendant identifies himself as Julius Brown, Jr.  However, the case caption reflects the name of Julius Brown.

[2] Upon Judge Davis's elevation to the Fourth Circuit, the case was reassigned to Judge William D. Quarles, Jr.  After Judge Quarles retired, it was reassigned to Judge J. Frederick Motz.  The case was reassigned to me on August 7, 2018, due to the retirement of Judge Motz.  *See* Docket.

Pub. L. 115-391, 132 Stat. 5239 (2018).  *See* ECF 444 at 6 (seeking a sentence reduction to 14 years for Counts One through Five, 5 years for Count Seven, and 5 years for Count Eight).[3] Brown does not seek a modification of his 25-year term of supervised release.  *Id.*

The government opposes the Motion (ECF 453), supported by two exhibits, including medical records. ECF 453-1; ECF 453-2. Defendant has replied.  ECF 457.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall construe the Motion under § 3582(c)(1)(A)(i) and grant it, with the added supervised release condition of one year of home confinement.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Brown and several others were charged with drug and firearms offenses in an Indictment filed on March 7, 2000.  ECF 1. [4]  A Superseding Indictment followed on August 8, 2000.  ECF 30.  And, a Second Superseding Indictment was filed on February 6, 2001, charging Brown and four others in eleven counts.  ECF 88.

From 1996 until March 2000, defendant conspired to distribute large quantities of heroin, cocaine, and cocaine base in Baltimore.  ECF 453 at 1.  The government has identified the defendant's coconspirators as the defendant's son, Thomas Carter; his brother, William Brown,

---

[3] As the defense observes, this Court recently reduced comparable sentences for two of Brown's codefendants, pursuant to Section 404 of the First Step Act.  *See United States v. Carter*, ELH-00-0100, ECF 424 (Apr. 17, 2020) (reducing sentence of life plus 30 years to 35 years); *United States v. Bobby Brown, id.*, ECF 414 (March 16, 2020) (reducing sentence of life plus 30 years to 40 years).

[4] Defendant was indicted on March 7, 2000.  ECF 1.  As a review of CM/ECF indicates, electronic availability of the court filings does not begin until June 2008, with ECF 267.  However, I have reviewed the Chambers files retained by the judges who previously handled Brown's case.  And, I recently docketed, under seal, Brown's Presentence Report which was provided by defense counsel.  *See* ECF 462.  In addition, at the Court's request, counsel has submitted a copy of the sentencing transcript. *See* ECF 464-1.

Sr.; and his nephews, Bobby Brown and William Brown, Jr. *Id.* at 1-2.[5]

According to the government, Brown was one of the persons who "secured the drugs for the organization . . . ." and packaged them for sale. *Id.* at 2. Moreover, the government claims that the defendants "used violence and intimidation to impose discipline." *Id.* And, the government points to evidence that Brown frequently carried guns. *Id.* at 2-3. Although Bobby Brown was identified as the person who murdered an individual named Douglas Pennix on January 23, 1999, evidence at trial linked the murder weapon, a Glock 9 millimeter handgun, to the defendant. *Id.* at 3.

In particular, Brown was charged as follows: conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of cocaine base, *i.e.*, crack cocaine, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A) (Count One); four counts of distribution and possession with intent to distribute heroin, under 21 U.S.C. § 841(a)(1) (Counts Two, Three, Four, and Five); two counts of possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Seven and Eight); threatening a witness, in violation of 18 U.S.C. § 1512(a) (Count Ten); and as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Eleven). The government subsequently dismissed Count Eleven. *See* ECF 462 (Presentence Report, "PSR"), ¶ 1.

In Count Six, codefendants Bobby Brown and Carter were charged with possession of a firearm in connection with the murder of Pennix.[6] Notably, Brown was not charged in Count

---

[5] According to the PSR, the conspiracy included at least eleven individuals who were identified by name in the PSR. ECF 462, ¶ 7. But, some of these individuals were not indicted in the underlying case.

[6] The PSR states that from 1996 through March 2000, "the *organization* used firearms in the murders of Douglas Pennix, Melvin Small, LaShawn Robinson, John Mark Nwolise, Robert

Six.

Codefendants William Brown, Sr. and William Brown, Jr. accepted responsibility and pleaded guilty. *See* ECF 462 at 2. But, Brown, Bobby Brown, and Carter proceeded to a jury trial that began on April 30, 2001, before Judge Davis. *See* Docket. The jury returned its verdict on June 5, 2001. Of relevance here, Brown was convicted of Counts One through Five and Seven through Nine. He was found not guilty as to Count Ten. Codefendants Bobby Brown and Carter were also convicted of several counts, but they were acquitted of Count Six. The jury also determined that Count One involved 100 grams or more of heroin, 50 grams or more of cocaine base, but no powder cocaine. *Id.*

Judge Davis conducted Brown's sentencing on August 17, 2001. *See* ECF 464-1 (Sentencing Transcript). At the time of sentencing, Brown was 51 years of age. *See* ECF 462 at 1. According to the PSR, Brown described his health as "'not good'" and advised that "he has a bad heart, very high blood pressure for which he takes medication daily and arthritis." *Id.* ¶ 86; *see also* ECF 464-1 at 29. He also explained that he "has an irregular heartbeat" and "fluid around his heart," "cannot walk long distances," and "was declared disabled in" 2000. ECF 462, ¶ 86; *see also* ECF 464-1 at 29.

According to the PSR, Brown had a base offense level of 38 for Count One, the drug conspiracy count, pursuant to § 2D1.1(c)(1) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 462, ¶ 17. However, in determining Brown's Guidelines range for Count One, the PSR applied the murder cross-reference provision, based on the first-degree murder of Pennix and others. *Id.* ¶¶ 19, 20. Therefore, the PSR reflected a base offense level of 43, pursuant to U.S.S.G. § 2D1.1(d)(1) and § 2A1.1. *Id.* In particular, U.S.S.G. §

Onwubike and James Streeter." ECF 462, ¶ 9 (emphasis added). The evidence at trial pertained to the murder of Pennix, discussed, *infra*.

2D1.1(d)(1) states: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1."

In addition, Brown received a four-level enhancement under U.S.S.G. § 3B1.1(a) for his role as an organizer or leader in the offense, which involved five or more participants.  ECF 462, ¶ 22.  And, Brown received a two-level enhancement under § 3C1.1 for obstruction of justice, for threatening witnesses to prevent them from testifying about the shooting of Pennix.  *Id.* ¶ 23. Given that Brown went to trial, he did not earn deductions for acceptance of responsibility. Thus, Brown had a final offense level of 49 as to Counts One through Five and Nine.  *Id.* ¶¶ 23, 36.  Counts Seven and Eight were excluded from grouping.  U.S.S.G. § 3D1.1(b); *see* ECF 462, ¶ 39.

The PSR recounted Brown's criminal history.   According to the PSR, Brown was sentenced in 1974 to a term of 20 years for a drug offense, and was paroled in 1980.  *Id.* ¶ 54. The offense did not score points.  Brown also had a robbery conviction dating to 1982, for which he received a sentence of 150 months to 25 years, and was paroled in 1995.  *Id.* ¶ 55.  That offense scored three points.  *Id.*  Two points were added because the underlying offenses occurred when Brown was on parole, and one point was added because the underlying offenses occurred within two years of Brown's release from incarceration.  Thus, he had six criminal history points, which equated to a Criminal History category of III. *Id.* ¶¶ 59-61.

Based on an offense level of 49 and a Criminal History Category of III, the PSR reflected a Guidelines range of life imprisonment. ECF 462, ¶ 68.  At the time of sentencing, the Guidelines were mandatory, not advisory.  *See United States v. Booker*, 543 U.S. 221 (2005). And, Counts Seven and Eight required an additional consecutive sentence totaling 30 years.

At sentencing, defense counsel vigorously disputed defendant's conviction as to Count Nine. ECF 464-1 at 13-24. Judge Davis stated, *id.* at 25: "In this case, the jury clearly had a basis to conclude beyond a reasonable doubt that Mr. Julius Brown undertook to intimidate Mr. Jamar Love from testifying in the state court trial of Mr. Bobby Brown." The court added that "the jury was entitled to infer . . . that [the] attempt at intimidation would necessarily carry over to the federal side." *Id.* at 25-26; *see also id.* at 27-28.

Defense counsel also addressed defendant's health conditions. *Id.* at 29. These conditions included "very high blood pressure . . . ." *Id.*

At sentencing, Judge Davis relied on the background he recited during the earlier sentencings for Bobby Brown and Carter, which were attended by counsel for this defendant. ECF 464-1 at 3. And, as he did for Bobby Brown and Carter, Judge Davis applied the first-degree murder cross-reference for the Pennix murder. *Id.* at 36. But, Judge Davis indicated that he did not consider the government's reference to "other murders." *Id.* at 7.[7]

Brown elected to allocute. He denied that he was part of the drug conspiracy (ECF 464-1 at 30-33) and he complained that he "was railroaded in this trial" and that the "case right here should never have been brought. . . ." *Id.* at 30. Brown added: "I never killed anyone. I never hurt anyone. . . .This case has never been investigated. I never done any of these things, but they say I'm a villain, a bad person…There's no proof I hurt anyone at all. I never done anything like that." *Id.* at 34.

In response, Judge Davis said: "All I can say is you have your view of reality, and the jury had a different view of reality, and I have to say to you, Mr. Brown, I don't think I have ever

---

[7] Defense counsel noted that Kelvin Langley entered an *Alford* plea in the Circuit Court for Baltimore County to the murders of two Nigerian drug dealers, Mr. Onwubiko and Mr. Nwolise. *Id.* at 8.

seen a case quite like this one." *Id.* at 35.  Indeed, Judge Davis was of the view that the defendant "received a fundamentally fair trial in every respect."  *Id.* at 11.

Count One, by statute, required a mandatory minimum sentence of ten years' imprisonment and carried a maximum term of life imprisonment.  By statute, Count Seven required a mandatory, consecutive sentence of five years' imprisonment, and Count Eight required a mandatory, consecutive sentence of 25 years' incarceration.  ECF 462, ¶¶ 65, 66. Judge Davis sentenced Brown to life imprisonment as to Count One; 20 years, concurrent, for Counts Two through Five; five years, consecutive, as to Count Seven; 25 years, consecutive, as to Count Eight; and ten years, concurrent, for Count Nine, for a total sentence of life plus 30 years.  ECF 175.[8]

Brown's conviction and sentence were affirmed on direct appeal.  ECF 215; *United States v. Brown*, 70 Fed. App'x 99, 104 (4th Cir. 2003) (per curiam).

On May 13, 2005, Brown filed his first motion to vacate under 28 U.S.C. § 2255.  ECF 223.  By Memorandum and Order of April 13, 2006, Judge Davis denied the motion to vacate. ECF 235; ECF 236.  Brown noted an appeal.  ECF 245.  He also sought a Certificate of Appealability (ECF 246), which Judge Davis denied.  ECF 247.  In a Judgment of January 9, 2007, the Fourth Circuit denied the Certificate of Appealability and dismissed the appeal.  ECF 249.  The mandate issued on May 10, 2007.  ECF 252.

Brown subsequently moved to alter or amend.  ECF 270.  Judge Davis denied that motion.  ECF 271.  Again, Brown appealed.  ECF 272.  He also moved to reduce his sentence under 18 U.S.C. § 3582(c)(2), based on Amendments 591 and 599.  ECF 309.  Judge Quarles

---

[8] Judge Davis erroneously stated that the total sentence was life plus 35 years.  ECF 464-1 at 37.  That error appears in various places.  *See, e.g.*, ECF 175; ECF 462 at 2; ECF 464-1 at 37.  However, the sentence, by count, adds up to life plus 30 years.  *See* ECF 464-1 at 36-37.

denied that motion.  ECF 316.  Brown appealed.  ECF 318.  The Fourth Circuit affirmed.  ECF 321.

On May 6, 2020, the Court appointed the Federal Public Defender to represent Brown in proceedings pursuant to the First Step Act of 2018.  ECF 434.  Defendant is now incarcerated at FCI Gilmer.  On May 19, 2020, Brown petitioned the Warden of FCI Gilmer for compassionate release, citing his age, health conditions, and amount of time served as "extraordinary and compelling" reasons for relief. ECF 444-3. The Warden denied defendant's request on the same date. ECF 453-1.  The Motion followed on August 29, 2020.  ECF 444.

Brown's medical history reflects various health issues, including high blood pressure and arthritis. ECF 462, ¶ 86.  In addition, at age 71, he suffers from edema, prediabetes, chronic pain, glaucoma, and age-related cataracts.  *See* ECF 446 to ECF 446-5 (Medical Records).

As indicated, Brown has been in custody since May 2000.  Because of his life sentence, he has no projected release date.

## II.    Statutory Framework

Brown seeks immediate compassionate release under 18 U.S.C. § 3582(c)(1)(a)(i).  Alternatively, he seeks a sentence reduction to 24 years under Section 404 of the First Step Act of 2018.  I turn to review these provisions.

### A.  Compassionate Release

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was enacted as part of the Sentencing Reform Act of 1984.  Originally, it permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP").  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the

BOP Director for relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress enacted the First Step Act of 2018 ("2018 FSA" or "First Step Act"), Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, ___ F.3d ___, 2020 WL 7050097, at *2 (4th Cir. Dec. 2, 2020).  As amended by the 2018 FSA, 18 U.S.C. § 3582(c)(1)(A) now permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  (Emphasis added).  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *McCoy*, 2020 WL 7050097, at *3.  That option constitutes a sea change in the law.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 2020 WL 7050097, at *3. In U.S.S.G. § 1B1.13, the Sentencing Commission addressed the "extraordinary and compelling reasons" that might merit compassionate release.   It is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." *See McCoy,* 2020 WL 7050097, at *3. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C).  *McCoy,* 2020 WL 7050097, at *3. But, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act.  *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§

1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 are expansive, and indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."  U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category."  *McCoy*, 2020 WL 7050097, at *3.

In resolving a compassionate release motion, a court must also consider the factors in 18 U.S.C. § 3553(a).  *See Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, ___ Fed. App'x ___, 2020 WL 6743609, at *2 (4th Cir. Nov. 17, 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  And, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

However, as indicated, § 1B1.13 was last updated in November 2018, before the enactment of the First Step Act.  It is only "directed at BOP requests for sentence reductions." *McCoy*, 2020 WL 7050097, at *3 (citing U.S.S.G. § 1B1.13).  "By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, __ F.3d __, 2020 WL 6817488, at *1–2 (6th Cir. Nov. 20, 2020); *United States v. Gunn*, __ F.3d __, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 2020 WL 7050097, at *8.  Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 2020 WL 7050097, at *9 (quoting *Zullo*, 976 F.3d at 230).

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See, e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.  *Dillon*, 560 U.S. at 827.  But, compassionate release is a "rare" remedy.  *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

**B.**

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Section 3582(c)(1)(B) provides:  "The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – ... (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute...."  And, modification is permitted for a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. . . ." 18 U.S.C. § 3582(c)(2); *see United States v. Smalls*, 720 F.3d 193, 195-96 (4th Cir. 2013).[9]

As mentioned, in December 2018 Congress enacted the First Step Act. *See McCoy*, 2020 WL 7050097, at *2.  The 2018 FSA expressly authorizes the modification of a previously imposed sentence for a defendant affected by the statutory changes to the penalty ranges for crack cocaine offenses.  *See Jackson*, 952 F.3d at 495.

Section 404 of the 2018 FSA "makes retroactive certain provisions of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010)."  *Jackson*, 952 F.3d at 495.  In turn, the Fair Sentencing Act of 2010 ("2010 FSA"), which took effect on August 3, 2010, "reduced the statutory penalties for cocaine base offenses" in order to "alleviate the severe sentencing

---

[9] "[A] sentence modification is not a plenary resentencing proceeding."  *Martin*, 916 F.3d at 396 (internal quotation marks omitted).

disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th

Cir. 2016); *see Dorsey v. United States*, 567 U.S. 260, 264 (2012).

Section 404 of the 2018 FSA provides:

**SEC. 404. Application of Fair Sentencing Act.**

(a) Definition of covered offense.—In this section, the term "covered offense"
means a violation of a Federal criminal statute, the statutory penalties for
which were modified by section 2 or 3 of the Fair Sentencing Act of 2010
(Public Law 111–220; 124 Stat. 2372), that was committed before August 3,
2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a
covered offense may, on motion of the defendant, the Director of the Bureau
of Prisons, the attorney for the Government, or the court, impose a reduced
sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law
111–220; 124 Stat. 2372) were in effect at the time the covered offense was
committed.

(c) Limitations.—No court shall entertain a motion made under this section to
reduce a sentence if the sentence was previously imposed or previously
reduced in accordance with the amendments made by sections 2 and 3 of the
Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a
previous motion made under this section to reduce the sentence was, after the
date of enactment of this Act, denied after a complete review of the motion on
the merits. Nothing in this section shall be construed to require a court to
reduce any sentence pursuant to this section.

The procedural framework that applies to motions under Section 404 is found in 18

U.S.C. § 3582(c)(1)(B).   *See United States v. Wirsing*, 943 F.3d 175, 183 (4th Cir. 2019)

(concluding that § 3582(c)(1)(B) is "the appropriate vehicle" for a 2018 FSA motion).   Thus,

eligible defendants may seek to reduce their sentences, pursuant to 18 U.S.C. § 3582(c)(1)(B).

As indicated, Brown was convicted in 2001 of various offenses, including Count One,

charging conspiracy to distribute and possess with intent to distribute narcotics, including

cocaine base ("crack"), in violation of 21 U.S.C. § 846.   At that time, 21 U.S.C. § 841(b)(1)(A)

provided, in part: "[I]n the case of a violation of subsection (a) of this section involving –

(i)      1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

(ii)      5 kilograms or more of a mixture or substance containing a detectable amount of [cocaine]; [or]

(iii)      50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;[10]

... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life ….

In this case, the jury determined that Count One involved 100 grams or more of heroin, 50 grams or more of cocaine base, but no powder cocaine. ECF 141. As to Count One, on the basis of 21 U.S.C. § 841(b)(1)(A)(iii), which criminalized 50 grams or more of cocaine base, Brown was subject to the statutory sentencing range of at least 10 years up to life imprisonment.

Following passage of the 2010 FSA, the quantity of cocaine base necessary to trigger § 841(b)(1)(A)(iii) was increased to 280 grams. *Dorsey*, 567 U.S. at 264. Moreover, under Section 2 of the 2010 FSA, the sentencing range for possession with intent to distribute less than 28 grams of cocaine base is zero to 20 years imprisonment; the sentencing range for possession with the intent to distribute more than 28 grams but less than 280 grams of cocaine base is five to 40 years of imprisonment; and the sentencing range for possession with the intent to distribute more than 280 grams of cocaine base is ten years to life imprisonment.[11]

Therefore, under the 2010 FSA, Congress increased the threshold quantities needed to trigger any mandatory sentencing ranges associated with crack cocaine offenses. *See Dorsey*, 567 U.S. at 269. In particular, the 2010 FSA reduced the disparity in the treatment of cocaine

---

[10] As discussed above, the 2010 FSA amended 21 U.S.C. § 841(b)(1)(A)(iii) to read: "280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base …."

[11] Section 3 of the Fair Sentencing Act, which is not at issue here, eliminated the mandatory minimum sentence for simple possession.

base and powder cocaine offenses from 100-to-1 to 18-to-1. *See Dorsey*, 567 U.S. at 264. And, of relevance here, Section 404 of the 2018 FSA makes the provisions of the 2010 FSA retroactive to and available to defendants who were sentenced before August 3, 2010. Because Brown was sentenced in August 2001, the threshold crack cocaine quantities of the 2010 FSA apply to him.

Brown's conviction under Count One is a "covered offense" under Section 404(a) of the 2018 FSA (defining a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the [2010 FSA [. . .].]."); *see United States v. Gravatt*, 953 F.3d 258,  262 (4th Cir. 2020) (discussing the "threshold requirement of a 'covered offense'"); *Peters*, 843 F.3d at 575 (stating that the 2010 FSA "reduced the statutory penalties for cocaine base offenses"). And, in accordance with the 2018 FSA, Count One now carries a mandatory minimum sentence of five years, rather than the ten years in effect when defendant was sentenced in 2001. Moreover, the maximum term of imprisonment for Count One is now 40 years, rather than a term of life imprisonment, which was the statutory maximum in 2001.[12] And, in 2001, the Guidelines were mandatory, whereas they are now advisory.

Of relevance here, the 2018 FSA permits, but does not compel, a district judge to reduce the sentence of an eligible defendant, as if the 2010 FSA were in effect when the defendant committed the offense. Section 404(c) expressly provides that any relief is discretionary. *See id.* ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); *see also Jackson*, 952 F.3d at 502 (noting that the district court "was not

---

[12] To be sure, Brown's sentencing Guidelines were based on the application of the murder cross-reference, calling for a life sentence. *See* U.S.S.G. § 2A1.1(a). But, it is axiomatic that a court cannot impose a sentence in excess of the statutory maximum. Here, the maximum for Count One is now 40 years.

obligated" to reduce the sentence nor must a reduction based on revised guidelines correspond in proportion to an earlier guidelines sentence); *United States v. Venable*, 943 F.3d 187, 194, n.10 (4th Cir. 2019); *cf. Chavez-Meza v. United States*, ___ U.S. ___, 138 S. Ct. 1959, 1966 (2018) (stating that at a resentencing based on a change in the Guidelines range, the judge need not impose a sentence proportional to the sentence imposed under the earlier Guidelines range); *United States v. Sellers*, 776 F. App'x 143 (4th Cir. 2019) (per curiam).

## C.

As to Counts Seven and Eight, the two firearms offenses under 18 U.S.C. § 924(c), Brown was sentenced to a mandatory consecutive term of 30 years (360 months).  At the relevant time, a defendant could be sentenced for multiple § 924(c) charges at the same time, even if the convictions were not yet final, resulting in one five-year sentence and a mandatory minimum penalty of 25 years, consecutive, for each subsequent § 924(c) offense.  *See United States v. Jordan*, 952 F.3d 160, 165 (4th Cir. 2020).  As to Brown's two convictions under 18 U.S.C. § 924(c) (Counts Seven and Eight), Judge Davis was required to impose five and 25 year sentences, respectively.

Section 403(a) of the 2018 FSA amended the language of 18 U.S.C. § 924(c)(1)(C) by striking a "second or subsequent conviction under this subsection" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final." Therefore, the amendment has effectively eliminated the procedure of "stacking" multiple § 924(c) convictions for the purpose of enhancing the penalties associated with "second or subsequent" § 924(c) convictions within the same indictment.  *Id.*  Under the now-amended statute, the enhanced mandatory minimum applies only if the prior qualifying § 924(c)

conviction was made final before the new violation occurred.  But, that was not the posture at the time of Brown's sentencing.

In other words, the 2018 FSA amended § 924(c), so that it "no longer applies to multiple § 924(c) convictions obtained in a single prosecution."  *Jordan*, 952 F.3d at 171.  But, this provision is not retroactive.  *See* 2018 FSA, Section 403(a), (b); *see also Jordan*, 952 F.3d at 172.

### III.   COVID-19[13]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020).  That crisis is COVID-19.[14]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.  *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."  *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases).  Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.  *Id.*

That said, the Court must underscore that the virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are

---

[13] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[14] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).   As of December 15, 2020, COVID-19 has infected more than 16.5 million Americans and caused over 300,000 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Dec. 15, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").   The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it."  *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020).  Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

Unfortunately, there is currently no cure or proven treatment that is available.  But, a vaccine has just become available.  So far, it is available on a limited basis, primarily for health care workers and the elderly.   It is anticipated that it will take months before it is widely available.

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness due to COVID-19.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.   *See*

*Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes. *Id.* The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).  Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2.

Prisoners have little ability to isolate themselves from the threat posed by the coronavirus.  *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high.").  Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others.  Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread.  *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[15] As of December 15, 2020, the BOP had 124,487 federal inmates and 36,000 staff. And, as of the same

---

[15] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19. *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-

date, the BOP reported that 6,023 inmates and 1,759 BOP staff currently tested positive for COVID-19; 26,197 inmates and 2,398 staff have recovered from the virus; and 163 inmates and two staff member have died from the virus.  Moreover, the BOP has completed 88,506 COVID-19 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Dec. 15, 2020).  *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Gilmer, where the defendant is a prisoner, the BOP reported as of December 15, 2020, that 8 inmates and 11 staff currently test positive for COVID-19 and 142 inmates and 11 staff have recovered at the facility. There have been no reported deaths. And, the facility has completed 706 COVID-19 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Dec. 15, 2020).

## IV.   COMPASSIONATE RELEASE

I begin with the request for modification of Brown's sentence under § 3582(c)(1)(A)(i).

Brown argues that his advanced age, deterioration in health, and substantial time served constitute "extraordinary and compelling reasons" that justify compassionate release. ECF 444 at 10-16.   In particular, defendant is now 71 years old and suffers from a variety of health conditions, including hypertension, edema, prediabetes, osteoarthritis, chronic pain, glaucoma, and age-related cataracts. *Id.*; ECF 446 to ECF 446-5. In addition, Brown is overweight, with a body mass index ("BMI") of 25.7. ECF 444 at 11. Brown takes medication to treat his

---

cases.html?name=styln-coronavisur&region=TOP_BANNER&block=storyline_menu_
recirc&action=click&pgtype=LegacyCollection&impression_id=78b44851-1885-11eb-baa7-
3f68d7b814c8&variant=1_Show.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems.*" America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html?referringSource=articleShare.

hypertension and glaucoma. ECF 446 at 2. Moreover, Brown contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of reducing his sentence to time served. ECF 444 at 26-34.

The government opposes defendant's Motion at each step of the analysis. It contends that Brown has not established extraordinary and compelling reasons for immediate release. ECF 453 at 12-22. Among other things, it claims that although defendant is now 71 years old and has served more than 10 years of his sentence, "he does not suffer serious deterioration in physical or mental health . . . ." *Id.* at 12. Moreover, in its view, release is not warranted because his medical conditions do not put him at an increased risk of severe illness from COVID-19, according to the CDC guidelines. *Id.* at 16-18. In any event, the government maintains that the § 3553(a) factors militate against a reduction of Brown's sentence. *Id.* at 33-37

### A. EXTRAORDINARY AND COMPELLING ANALYSIS

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). However, it is widely recognized that older adults face an increased risk of severe consequences from COVID-19 infection. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, Ctrs. For Disease Control & Prevention (Nov. 27, 2020), https://bit.ly/3g1USZ1. Moreover, Brown is somewhat overweight and suffers from hypertension. According to the CDC, either of these conditions might increase the risk for severe illness from COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY. Further, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19), People Who*

*Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

Numerous courts have found that, in light of the COVID-19 pandemic, a serious chronic medical condition, such as hypertension, coupled with advanced age, qualifies as a compelling reason for compassionate release. *See United States v. Williams*, __ F. Supp. 3d __, 2020 WL 4040706, at *4 (E.D. Mich. July 17, 2020) (finding defendant's age of 68 qualified as extraordinary and compelling reason); *United States v. Salvagno,* No. 5:02-cr-00051-LEK, 2020 WL 3410601 (N.D.N.Y June 22, 2020) (granting compassionate release to inmate whose sole medical condition was hypertension); *see also, e.g.*, *United States v. Cuevas*, No. GJH-16-0451, 2020 WL 4436380, at *4-5 (D. Md. Aug. 3, 2020) (granting compassionate release to 65-year-old inmate who suffered from hypertension, obesity, and prediabetes); *United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension constituted extraordinary and compelling reason); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (defendant's diabetes, hypertension, obesity, and age constituted extraordinary and compelling reason); *United States v. Pena*, No. 15-CR-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension[.]"); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes, prostate issues, bladder issues, and a dental infection).

Accordingly, I am satisfied that Brown satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

**B. Section 3553(a) Factors**

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A). These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As indicated, the government contends that the factors under § 3553(a) militate against granting defendant's Motion. The government urges the Court to find that the defendant is still a danger to the community, citing the seriousness of his offense in this case and his extensive criminal history, including multiple crimes involving violence. ECF 453 at 33-35. According to the government, defendant is "resistant to rehabilitation, does not respect the law, and poses a serious danger to the community." *Id.* at 37.

Defendant acknowledges the seriousness of his offense. ECF 444 at 35. But, he contends that a reduced sentence would reflect his substantial post-offense rehabilitation and low risk of reoffending. *Id.* at 27-31. And, he maintains that a reduction is warranted to bring his sentence in line with sentences that similarly situated defendants now receive in this District. *Id.* at 32-35.

Notably, if Brown were prosecuted today, he would likely have received a significantly different sentence than the one he received in 2001. For one thing, the maximum sentence applicable to Count One would now be 40 years, not life.  And, the two convictions under § 924(c) would now require a minimum of ten years of incarceration, not 30 years.

As part of the § 3553(a) analysis, many judges in this District have considered a change in the penalties that a defendant would face if prosecuted today. *See, e.g., United States v. Chandler*, GLR-05-0181, ECF 119 at 1-2 (D. Md. May 14, 2020); *United States v. Decator*, 452

F. Supp. 3d 320 (D. Md. 2020), *aff'd*, *McCoy*, 2020 WL 7050097; *United States v. Laurey*, JKB-06-0586, ECF 81 at 1, 3 (D. Md. Feb. 19, 2020); *United States v. Wesley*, JKB-10-0118, ECF 73 at 1 (D. Md. Feb. 18, 2020); *United States v. Smith*, DKC-98-0252, ECF 92 at 4 (D. Md. Feb. 14, 2020); *United States v. Watts*, PJM-06-036, ECF 114 at 7 (D. Md. Feb. 6, 2020); *United States v. Thompson*, CCB-09-0128, ECF 123 at 2 (D. Md. Jan. 16, 2020). As Judge Bennett recently explained: "[C]hanges in the sentencing law landscape are relevant to the Court's analysis of whether the Court's sentence appropriately addresses 'the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public.'" *United States v. Johnson*, No. RDB-07-0153, ECF No. 183 at 10-11 (D. Md. Oct. 14, 2020); s*ee also McCoy*, 2020 WL 7050097, at *11 (concluding, with respect to a motion for compassionate release, that a court may consider the impact of legislative changes in sentencing under 18 U.S.C. § 924(c) even if the sentence would not be reduced pursuant to a retroactive application of the amended § 924(c)).

Brown was charged, *inter alia*, with conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846. As I reviewed earlier, at the time of the offense, 21 U.S.C. § 841(b)(1)(A) provided, in part: "[I]n the case of a violation of subsection (a) of this section involving –

*      *      *

> (iv)      50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;
>
> ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life ….

The jury determined that Count One involved 100 grams or more of heroin, 50 grams or more of cocaine base, and no powder cocaine. ECF 141. Based on these findings, Brown was

subject to the statutory sentencing range for Count One of at least 10 years of imprisonment, up to life imprisonment, on the basis of 21 U.S.C. § 841(b)(1)(A)(iii), which criminalized 50 grams or more of cocaine base.   However, pursuant to the 2010 FSA and Section 404 of the 2018 FSA, the statutory sentencing range for possession with intent to distribute more than 28 grams but less than 280 grams of cocaine base is now five years to 40 years of imprisonment.

Therefore, Count One now carries a mandatory minimum sentence of five years, rather than the ten years that was in effect in 2001.  Moreover, the maximum term of imprisonment is now 40 years, rather than a term of life imprisonment, which was the statutory maximum in 2001.  Accordingly, if Brown were sentenced today, as to Count One he would face a maximum term of 40 years of imprisonment, not life imprisonment.

As to Counts Seven and Eight, the two firearms offenses under 18 U.S.C. § 924(c), Brown was sentenced to a total mandatory consecutive term of 30 years.  At the time, a defendant could be sentenced for multiple § 924(c) charges at the same time, even if the convictions were not yet final, resulting in one five-year sentence and a mandatory minimum penalty of 25 years, consecutive, for each subsequent § 924(c) offense.  *See United States v. Jordan*, 952 F.3d 160, 165 (4th Cir. 2020).

As indicated, Section 403(a) of the 2018 FSA amended the language of 18 U.S.C. § 924(c)(1)(C) by striking a "second or subsequent conviction under this subsection" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final."  Therefore, the amendment has effectively eliminated the procedure of "stacking" multiple § 924(c) convictions for the purpose of enhancing the penalties associated with "second or subsequent" § 924(c) convictions within the same indictment.  *Id.*  Thus, the

2018 FSA amended § 924(c), so that it "no longer applies to multiple § 924(c) convictions obtained in a single prosecution." *Jordan*, 952 F.3d at 171.

And, unlike in 2001, when the Guidelines were mandatory, they are now merely advisory. As the defendant observes, in 2001 Judge Davis "had no choice but to impose a sentence of life imprisonment on Count One (conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine), plus consecutive sentences of 5 and 25 years, respectively, on Counts Seven and Eight (possession of a firearm in furtherance of a drug-trafficking crime), [but] today the Court would be free to impose a sentence anywhere between 5 to 40 years on Count One and, based on recent amendments to § 924(c), would be required to impose consecutive terms of only 5 years each on Counts Seven and Eight." ECF 444 at 1-2.

Further, defendant argues: "Brown's sentence is not only out of step with current drug and § 924(c) sentences, but also national and district-wide trends for defendants who, unlike him, were convicted of murder." ECF 444 at 32. Indeed, Brown's sentence of life plus 30 years appears significantly longer than at least some federal sentences imposed more recently for drug offenses involving murder. *See United States v. Bryant*, 95-202-CCB-3, 2020 WL 2085471, at *5 n.8 (D. Md. Apr. 30, 2020) ("According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months, and the Fourth Circuit average was 327 months.") (citing *United States v. Redd*, 444 F. Supp. 3d 717, 728 (E.D. Va. 2020); United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2018, Fourth Circuit, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2018/4c18.pdf), *aff'd*, *McCoy*, 2020 WL 7050097.

For example, in *United States v. Floyd*, CCB-16-597, Floyd was one of several

defendants convicted after a 25-day trial. *See id.*, ECF 477; ECF 491. In particular, Floyd was convicted of a racketeering conspiracy that included murders and drug conspiracy. Floyd was not the shooter, however.  Although his offense level and criminal history category called for a life sentence, Judge Blake imposed a total sentence of 360 months' imprisonment. *Id.*, ECF 691.

More recently, in *United States v. Antoine*, PWG-19-140, the defendant was involved in a drug trafficking organization in Baltimore, and confessed to the intentional shooting and killing of an individual in relation to the drug conspiracy. *See id.*, ECF 349 at 9-10. Pursuant to a plea agreement, Antoine entered a plea of guilty to one count of conspiracy to distribute controlled substances and one count of discharging a firearm resulting in death during and in relation to a drug trafficking crime. *Id.*  Although Antoine was the shooter, pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government has agreed to a term of imprisonment ranging between 20 and 25 years. *Id.* at 6.[16]

Moreover, this Court recently reduced the life sentences of two of Mr. Brown's codefendants, Bobby Brown and Thomas Carter.  *See United States v. Carter*, ELH-00-0100, ECF 424 (D. Md. Apr. 17, 2020); *United States v. Bobby Brown*, ELH-00-0100, ECF 414 (D. Md. Mar. 16, 2020).  Notably, Bobby Brown was deemed responsible at sentencing for the shooting of Douglas Pennix.  He was 27 at the time of sentencing, and Mr. Carter was 29 at sentencing.  Based on Section 404, I reduced Bobby Brown's sentence of life plus 30 years to 40 years, and I reduced Carter's sentence to 35 years.  ECF 424.  Unlike his codefendants, Julius Brown was not charged with the Pennix shooting, and he was 51 years old at sentencing.

To be sure, the gravity of Brown's crimes cannot be minimized. And, as reviewed earlier, Brown's criminal history is extensive.  *See* ECF 462, ¶¶ 54, 57.  In 1982, for example, he

---

[16] The sentencing has not yet taken place.  And, of course, the judge is not bound by the terms of the C plea.

received a sentence of 150 months to 25 years for a robbery conviction, and was paroled in 1995. *Id.* ¶ 54. But, Brown has now served more than 20 years for the instant offense. If Brown were eligible for good conduct credit, that would be the equivalent of about 24 years of incarceration.

In addition, studies show that recidivism decreases with age. Given that the defendant is now 71, there is a reduced risk that he will return to criminal activity upon his release. *See, e.g., United States v. Braxton*, JKB-09-478, 2020 WL 4748536, at *4 (D. Md. Aug. 17, 2020) (finding a recidivist offender would pose "little danger to the public at this point" because of his age of 63 years) (citing U.S. Sent. Comm., The Effects of Aging on Recidivism Among Federal Offenders, 2017, at 3 ("Older offenders were substantially less likely than younger offenders to recidivate following release ... 13.4 percent of offenders age 65 or older at the time of release were rearrested[.]")).

Further, Brown's behavior for the past 20 years, while in BOP custody, is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *see also United States v. Scott*, CCB-95-202, 2020 WL 2467425, at *4 (D. Md. May 13, 2020). Defendant has worked as a unit orderly for the last two years and received "excellent work reports" in the BOP. ECF 444-4 at 1, 3. He has had only two minor infractions while incarcerated, and he has been infraction free for almost 12 years. ECF 444-4. This reflects Brown's maturation and self-control.

In this regard, it is also noteworthy that Brown now accepts responsibility for his criminal conduct. In a letter to the Court, Brown stated, in part: "I've made Plenty mistakes [sic] in the past and I truly accept all responsibility for my actions and apologize for them." ECF 444-1.

Brown is the father of six children from three different relationships. ECF 462, ¶¶ 81-84. To Brown's credit, while he has been incarcerated he has endeavored to maintain ties with members of his family. ECF 444 at 29-30; *see* ECF 444-7 to ECF 444-22 (Letters from Brown's family members).  And, if released, Brown plans to live with his 86-year-old mother and work as a handyman at his son-in-law's properties. ECF 444 at 29.

It is also noteworthy that Brown's incarceration in the midst of a global pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction." *United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020); *see also United States v. Park*, No. 16-cr-00473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020) (noting that a sentence "that was sufficient but no greater than necessary" may now, in light of COVID-19, become "one immeasurably greater than necessary").

Considering Brown's age, deteriorating health, efforts toward rehabilitation, good behavior, and the changes in the sentencing landscape since 2001, Brown's incarceration for a period of more than 20 years is sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation. Accordingly, I find that the factors under 18 U.S.C. § 3553(a) weigh in favor of reducing Brown's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of one year of home confinement as a condition of supervised release.

## V.   CONCLUSION

For the forgoing reasons, I shall grant the Motion (ECF 444), pursuant to 18 U.S.C. § 3982(c)(1)(A)(i).  Therefore, the defendant's sentence shall be reduced to time served plus 14 days, to be followed by 25 years of supervised released.  I shall adopt all of the previously

imposed conditions of supervised release.  And, as an added condition of supervised release, I will require a one-year period of home confinement.

Based on my resolution of the Motion under 18 U.S.C. § 3582(c)(1)(A)(i), I need not decide the matter under Section 404 of the First Step Act.

An Order follows, consistent with this Memorandum Opinion.

Date:   December 17, 2020                          _____/s/_____

Ellen Lipton Hollander
United States District Judge