IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

JULIUS BROWN,

*Defendant*.

Criminal Action No. ELH-00-0100

**MEMORANDUM**

This Memorandum resolves the "Request For Early Termination" of supervised release ("Request"), submitted by the U.S. Probation Office on October 3, 2025, with respect to defendant Julius Brown. ECF 556. The government opposes the Request. ECF 555.[1] No reply has been filed.

In August 2001, Judge Andre Davis, to whom the case was then assigned, sentenced Brown to life imprisonment plus 30 years for drug trafficking and related offenses. ECF 175.[2] Defendant had been in custody since his arrest in May 2000. At the time of sentencing, that sentence was mandatory. Judge Davis nonetheless imposed a 25-year period of supervised release.

In August 2020, Brown sought compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), due to "extraordinary and compelling reasons," seeking a sentence of time served. ECF 4444. Alternatively, he requested a reduction of his sentence to 24 years, under

[1] The Court docketed the Request on November 5, 2025. Thus, the filing of the opposition erroneously appears to precede the Request.

[2] Upon Judge Davis's elevation to the Fourth Circuit, the case was reassigned to Judge William D. Quarles, Jr. After Judge Quarles retired, it was reassigned to Judge J. Frederick Motz. The case was reassigned to me on August 7, 2018, due to the retirement of Judge Motz. *See* Docket.

Section 404 of the First Step Act of 2018 ("2018 FSA" or "First Step Act"), Pub. L. 115-391, 132 Stat. 5239 (2018). *Id.* The motion was supported by numerous exhibits. Notably, Brown did not seek a modification of the 25-year term of supervised release imposed by Judge Davis. *See* ECF 444 at 6.

I granted defendant's motion by Memorandum Opinion and Order of December 17, 2020. ECF 465, ECF 466. In particular, I reduced defendant's sentence to time served plus fourteen days. Notably, I did not alter the term of supervised release. But, I added a condition of one year of home confinement.

Brown, who is now 76 years of age, was released from prison on December 31, 2020, after serving about twenty years. At that time, he began a 25-year term of supervised release that included a period of home confinement. Defendant was on home confinement only until July 13, 2021. *See* ECF 519.

In August 2023, defendant's probation agent sought early termination of defendant's supervised release. ECF 519. The Court regarded the request as "premature" and denied it. *Id.* at 2. I explained: "Given the gravity of the offenses . . . I believe continued supervision is appropriate." *Id.* Moreover, I expressly stated that, when "I reduced the defendant's life sentence to time served, [I] took into account that the defendant did not oppose a lengthy period of supervised release." *Id.* However, I also I stated: "The Court will entertain an early termination at a future date." *Id.*

No hearing is necessary to resolve the Request. Local Rule 105.6. For the reasons that follow, I shall deny the Request, without prejudice.

## I. Factual and Procedural Background[3]

Brown and several others were charged with drug and firearms offenses in an Indictment filed on March 7, 2000. ECF 1.[4] A Superseding Indictment followed on August 8, 2000. ECF 30. And, a Second Superseding Indictment was filed on February 6, 2001, charging Brown and four others in eleven counts. ECF 88.

From 1996 until March 2000, defendant conspired to distribute large quantities of heroin, cocaine, and cocaine base in Baltimore. *See* ECF 453 (Govt. opposition to defendant's compassionate release motion), at 1. According to the government, Brown was one of the persons who "secured the drugs for the organization . . . ." and packaged them for sale. *Id.* at 2. Moreover, the government claimed that the defendants "used violence and intimidation to impose discipline." *Id.*

Codefendant Bobby Brown was identified as the person who murdered an individual named Douglas Pennix on January 23, 1999. *Id.* at 3. But, evidence at trial linked the murder weapon, a Glock 9 millimeter handgun, to the defendant. *Id.*

In particular, Brown was charged as follows: conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, five kilograms or more of cocaine, and 50 grams or more of cocaine base, *i.e.*, crack cocaine, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A) (Count One); four counts of distribution and possession with intent to distribute heroin, under 21 U.S.C. § 841(a)(1) (Counts Two, Three, Four, and Five); two counts of possession of a firearm during and in relation to a drug trafficking crime, in violation of 18

[3] I adopt and incorporate the factual and procedural summary set forth in my Memorandum Opinion of December 17, 2020. *See* ECF 465.

[4] Defendant was indicted on March 7, 2000. ECF 1. As a review of CM/ECF indicates, electronic availability of the court filings does not begin until June 2008, with ECF 267.

U.S.C. § 924(c) (Counts Seven and Eight); threatening a witness, in violation of 18 U.S.C. § 1512(a) (Count Ten); and as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Eleven). The government subsequently dismissed Count Eleven. *See* ECF 462 (Presentence Report, "PSR"), ¶ 1.

In Count Six, codefendants Bobby Brown and Carter were charged with possession of a firearm in connection with the murder of Pennix.[5] Notably, Brown was not charged in Count Six.

Codefendants William Brown, Sr. and William Brown, Jr. pleaded guilty to certain offenses. *See* ECF 462 at 2. But, the defendant, along with Bobby Brown, and Carter, proceeded to a jury trial that began on April 30, 2001. *See* Docket. The jury returned its verdict on June 5, 2001. Brown was convicted of Counts One through Five and Seven through Nine, but he was found not guilty as to Count Ten. Codefendants Bobby Brown and Carter were also convicted of several counts, but they were acquitted of Count Six. In addition, the jury determined that Count One involved 100 grams or more of heroin, 50 grams or more of cocaine base, but no powder cocaine. *Id.*

Defendant's sentencing was held on August 17, 2001. *See* ECF 464-1 (Sentencing Transcript). At the time of sentencing, Brown was 51 years of age. *See* ECF 462 at 1.

According to the PSR, Brown had a base offense level of 38 for Count One, the drug conspiracy count, pursuant to § 2D1.1(c)(1) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). ECF 462, ¶ 17. However, in determining Brown's Guidelines range for Count One, the PSR applied the murder cross-reference provision, based on the first-

[5] The PSR states that from 1996 through March 2000, "the *organization* used firearms in the murders of Douglas Pennix, Melvin Small, LaShawn Robinson, John Mark Nwolise, Robert Onwubike and James Streeter." ECF 462, ¶ 9 (emphasis added). The evidence at trial pertained to the murder of Pennix.

degree murder of Pennix and others. *Id.* ¶¶ 19, 20. Therefore, the PSR reflected a base offense level of 43, pursuant to U.S.S.G. § 2D1.1(d)(1) and § 2A1.1. *Id.* In particular, U.S.S.G. § 2D1.1(d)(1) states: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1."

In addition, Brown received a four-level enhancement under U.S.S.G. § 3B1.1(a) for his role as an organizer or leader in the offense, which involved five or more participants. ECF 462, ¶ 22. And, Brown received a two-level enhancement under § 3C1.1 for obstruction of justice, for threatening witnesses to prevent them from testifying about the shooting of Pennix. *Id.* ¶ 23. Given that Brown went to trial, he did not earn deductions for acceptance of responsibility. Thus, Brown had a final offense level of 49 as to Counts One through Five and Nine. *Id.* ¶¶ 23, 36. Counts Seven and Eight were excluded from grouping. U.S.S.G. § 3D1.1(b); *see* ECF 462, ¶ 39.

The PSR recounted Brown's criminal history. According to the PSR, Brown was sentenced in 1974 to a term of 20 years for a drug offense, and was paroled in 1980. *Id.* ¶ 54. The offense did not score points. Brown also had a robbery conviction dating to 1982, for which he received a sentence of 150 months to 25 years, and was paroled in 1995. *Id.* ¶ 55. That offense scored three points. *Id.* Two points were added because the underlying offenses occurred when Brown was on parole, and one point was added because the underlying offenses occurred within two years of Brown's release from incarceration. Thus, defendant had six criminal history points, which yielded a criminal history category of III. *Id.* ¶¶ 59-61. However, if defendant were sentenced today, under U.S.S.G. § 4A1.1(e), effective November 2023, he would no longer be subject to the two status points that were added because he committed the

offenses at issue while on parole.

Nevertheless, this change would not affect defendant's criminal history category. Whether defendant has six criminal history points or four, he would have a criminal history category of III.

Based on an offense level of 49 (reduced to the maximum offense level of 43), and a criminal history category of III, the PSR reflected a Guidelines range of life imprisonment. ECF 462, ¶ 68. And, at the time of sentencing, the Guidelines were mandatory, not advisory. *See United States v. Booker*, 543 U.S. 221 (2005). Moreover, Counts Seven and Eight required an additional consecutive sentence totaling 30 years.

At sentencing, Judge Davis applied the first-degree murder cross-reference for the Pennix murder. ECF 464-1 at 36. But, Judge Davis indicated that he did not consider the government's reference to "other murders." *Id.* at 7.

Brown elected to allocate. He denied that he was part of the drug conspiracy (ECF 464-1 at 30-33) and he complained that he "was railroaded in this trial" and that the "case right here should never have been brought. . . ." *Id.* at 30. Brown added: "I never killed anyone. I never hurt anyone. . . . This case has never been investigated. I never done any of these things, but they say I'm a villain, a bad person…There's no proof I hurt anyone at all. I never done anything like that." *Id.* at 34. In response, Judge Davis said: "All I can say is you have your view of reality, and the jury had a different view of reality, and I have to say to you, Mr. Brown, I don't think I have ever seen a case quite like this one." *Id.* at 35. Moreover, Judge Davis was of the view that the defendant "received a fundamentally fair trial in every respect." *Id.* at 11.

Count One, by statute, required a mandatory minimum sentence of ten years' imprisonment and carried a maximum term of life imprisonment. By statute, Count Seven

required a mandatory, consecutive sentence of five years' imprisonment, and Count Eight required a mandatory, consecutive sentence of 25 years' incarceration. ECF 462, ¶¶ 65, 66. Judge Davis sentenced Brown to life imprisonment as to Count One; 20 years, concurrent, for Counts Two through Five; five years, consecutive, as to Count Seven; 25 years, consecutive, as to Count Eight; and ten years, concurrent, for Count Nine, for a total sentence of life plus 30 years. ECF 175.[6]

Brown's conviction and sentence were affirmed on direct appeal. ECF 215; *United States v. Brown*, 70 Fed. App'x 99, 104 (4th Cir. 2003) (per curiam).

On May 13, 2005, Brown filed his first motion to vacate under 28 U.S.C. § 2255. ECF 223. By Memorandum and Order of April 13, 2006, Judge Davis denied the motion to vacate. ECF 235; ECF 236. Brown noted an appeal. ECF 245. He also sought a Certificate of Appealability (ECF 246), which Judge Davis denied. ECF 247. In a Judgment of January 9, 2007, the Fourth Circuit denied the Certificate of Appealability and dismissed the appeal. ECF 249. The mandate issued on May 10, 2007. ECF 252.

Brown subsequently moved to alter or amend. ECF 270. Judge Davis denied that motion. ECF 271. Again, Brown appealed. ECF 272. He also moved to reduce his sentence under 18 U.S.C. § 3582(c)(2), based on Amendments 591 and 599. ECF 309. Judge Quarles denied that motion. ECF 316. Brown appealed. ECF 318. The Fourth Circuit affirmed. ECF 321.

On May 6, 2020, the Court appointed the Federal Public Defender to represent Brown in proceedings pursuant to the First Step Act of 2018. ECF 434. The combined compassionate

[6] Judge Davis erroneously stated that the total sentence was life plus 35 years. ECF 464-1 at 37. That error appears in various places. *See*, *e.g.*, ECF 175; ECF 462 at 2; ECF 464-1 at 37. However, the sentence, by count, adds up to life plus 30 years. *See* ECF 464-1 at 36-37.

release and Section 404 motion followed on August 29, 2020. ECF 444. Essentially, defendant sought a time served sentence. ECF 444 at 6. But, of import, defendant said, *id.*: "Mr. Brown does not request a modification of the 25-year term of supervised release to follow his sentence, which would, in effect, result in him being supervised by the U.S. Probation Office for the rest of his life."

In regard to defendant's motion (ECF 444), the Court determined that Brown's conviction under Count One is a "covered offense" under Section 404(a) of the 2018 FSA (defining a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 ["2010 FSA"] . . . that was committed before August 3, 2010."; *see United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020) (discussing the "threshold requirement of a 'covered offense'"). And, in accordance with the 2018 FSA, Count One now carries a mandatory minimum sentence of five years, rather than the ten years in effect when defendant was sentenced in 2001. Moreover, the maximum term of imprisonment for Count One is now 40 years, rather than a term of life imprisonment, which was the statutory maximum in 2001.[7] And, in 2001, the Guidelines were mandatory, whereas they are now advisory.

As to Counts Seven and Eight, the two firearms offenses under 18 U.S.C. § 924(c), Brown was sentenced to a mandatory consecutive term of 30 years (360 months). At the relevant time, a defendant could be sentenced for multiple § 924(c) charges at the same time, even if the convictions were not yet final, resulting in one five-year sentence and a mandatory minimum penalty of 25 years, consecutive, for each subsequent § 924(c) offense. *See United*

[7] To be sure, Brown's sentencing Guidelines were based on the application of the murder cross-reference, calling for a life sentence. *See* U.S.S.G. § 2A1.1(a). But, it is axiomatic that a court cannot impose a sentence in excess of the statutory maximum. Here, the maximum for Count One is now 40 years.

*States v. Jordan*, 952 F.3d 160, 165 (4th Cir. 2020). As to Brown's two convictions under 18 U.S.C. § 924(c) (Counts Seven and Eight), Judge Davis was required to impose five and 25 year sentences, respectively.

Section 403(a) of the 2018 FSA amended the language of 18 U.S.C. § 924(c)(1)(C) by striking a "second or subsequent conviction under this subsection" and inserting "violation of this subsection that occurs after a prior conviction under this subsection has become final." Therefore, the amendment effectively eliminated the procedure of "stacking" multiple § 924(c) convictions for the purpose of enhancing the penalties associated with "second or subsequent" § 924(c) convictions within the same indictment. *Id.* Under the now-amended statute, the enhanced mandatory minimum applies only if the prior qualifying § 924(c) conviction was made final before the new violation occurred. But, that was not the posture at the time of Brown's sentencing.

In other words, the 2018 FSA amended § 924(c) so that it "no longer applies to multiple § 924(c) convictions obtained in a single prosecution." *Jordan*, 952 F.3d at 171. But, this provision is not retroactive. *See* 2018 FSA, Section 403(a), (b); *see also Jordan*, 952 F.3d at 172.

It is also noteworthy that defendant filed his compassionate release motion while the nation was "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). The World Health Organization declared a global pandemic due to COVID-19 on March 11, 2020.[8] *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

[8] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW.

The COVID-19 pandemic was the worst public health crisis that the world had experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020). Indeed, for a significant period of time, life as we knew it came to a halt.

The Centers for Disease Control and Prevention ("CDC") identified certain risk factors that increase the chance of severe illness due to COVID-19. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020 and July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY. According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes. *Id.* The CDC also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if*

*Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

The CDC also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Brown argued, *inter alia*, that his advanced age, deterioration in health, and substantial time served constituted "extraordinary and compelling reasons" that justified compassionate release. ECF 444 at 10-16. In particular, defendant, who was then 71 years old, suffers from a variety of health conditions, including hypertension, edema, prediabetes, osteoarthritis, chronic pain, glaucoma, and age-related cataracts. *Id.*; ECF 446; ECF 446-5. In addition, Brown had a BMI of 25.7. ECF 444 at 11.

I determined that Brown satisfied the "extraordinary and compelling" prong of the § 3582 analysis. ECF 465 at 25. I then considered the factors set forth in 18 U.S.C. § 3553(a); *see* 18 U.S.C. § 3582(c)(1)(A). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Notably, I pointed out that, if Brown were prosecuted today, he would likely have received a significantly lower sentence than the one he received in 2001. For one thing, the maximum sentence applicable to Count One would now be 40 years, not life imprisonment.

And, the two convictions under § 924(c) would now require a minimum of ten years of incarceration, not 30 years. ECF 465 at 26.

Moreover, unlike in 2001, when the Guidelines were mandatory, they are now merely advisory. As the defendant observed, in 2001 Judge Davis "had no choice but to impose a sentence of life imprisonment on Count One (conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine), plus consecutive sentences of 5 and 25 years, respectively, on Counts Seven and Eight (possession of a firearm in furtherance of a drug-trafficking crime), [but] today the Court would be free to impose a sentence anywhere between 5 to 40 years on Count One and, based on recent amendments to § 924(c), would be required to impose consecutive terms of only 5 years each on Counts Seven and Eight." ECF 444 at 1-2.

The Court recognized that "the gravity of Brown's crimes cannot be minimized." *Id.* at 30. But, by then Brown had served more than 20 years for the instant offenses. And, if Brown were eligible for good conduct credit, that would be the equivalent of about 24 years of incarceration. In addition, studies show that recidivism decreases with age. Further, Brown's behavior for the past 20 years, while in BOP custody, reflected only two minor infractions, and none in the twelve years preceding the filing of the compassionate release motion. ECF 444-4, ECF 465 at 31.

Moreover, Brown was then 71 years of age and his medical history reflected several health conditions. ECF 462, ¶ 86; ECF 446 to ECF 446-5. He also accepted responsibility for his criminal conduct. ECF 441-1. In a letter to the Court, he stated, in part: "I've made Plenty mistakes [sic] in the past and I truly accept all responsibility for my actions and apologize for them." *Id.*

Brown is the father of six children from three different relationships. ECF 462, ¶¶ 81-84. To Brown's credit, while he was incarcerated he endeavored to maintain ties with members of his family. ECF 444 at 29-30; *see* ECF 444-7 to ECF 444-22 (letters from Brown's family members).

Considering Brown's age, deteriorating health, efforts toward rehabilitation, good behavior, and the changes in the sentencing landscape since 2001, I was of the view that Brown's incarceration for a period of more than 20 years was sufficient to serve the sentencing goals of incapacitation, deterrence, retribution, and rehabilitation. ECF 465 at 32. Accordingly, I determined that the factors under 18 U.S.C. § 3553(a) weighed in favor of reducing Brown's sentence to time served plus fourteen days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), with the added requirement of one year of home confinement as a condition of supervised release.

Of significance, I did not reduce the 25 years of supervised release that Judge Davis had imposed. *Id.*; *see also* ECF 466. To the contrary, I relied on defendant's representation that he did not seek a modification of that term. ECF 644 at 6. I stated, ECF 455 at 2: "Brown does not seek a modification of his 25-year term of supervised release."

On August 8, 2023, defendant's probation officer submitted a request for early termination of supervised release. ECF 519. At that point, Brown had been on supervised release for about 32 months. In denying the Motion, I stated that "the motion is premature . . . ." ECF 519. I stated, *id.*: "I reduced the defendant's life sentence to time served, and took into account that the defendant did not oppose a lengthy period of supervised release. Given the gravity of the offenses at issue, I believe continued supervision if appropriate."

The Request followed on October 3, 2025. ECF 556. The government opposes the Request. It notes that defendant has completed less than one fifth of his 25-year term of

supervised release. *See United States v. Jeffries*, RDB-14-580, 2021 WL 3212585, *1 (D. Md. July 29, 2021) ("[T]he District of Maryland Early Termination Policy normally requires that persons serve half of their period of supervision before being considered for early termination."); *see also United Stats v. Lyons*, DKC-13-282, 2020 WL 7769782, *1 (D. Md. Dec. 30, 2020) (same). In addition, in light of the pertinent factors in 18 U.S.C. § 3553(a), the government contends that early termination is not warranted. *Id.* at 3.

## II. Discussion

Under 18 U.S.C. § 3583(e)(1), after a defendant has served one year of supervised release, a district court may terminate the remaining term after considering certain factors in 18 U.S.C. § 3553(a), so long as the court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *see United States v. Patterson*, 2025 WL 2784839, at *1 (4th Cir. Sept. 30, 2025) (per curiam).

In particular, the district court must consider the following § 3553(a) factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (3) the need for the sentence imposed to protect the public from further crimes of the defendant; (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the kinds of sentence and sentencing range established for the applicable category of offense committed, as set forth in the Sentencing Guidelines; (6) pertinent policy statements issued by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide

restitution to any victims of the offense. *See* 18 U.S.C. §§ 3583(e), 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7).

To be sure, the defendant has been compliant with his supervised release terms. But, as the government notes, he should be. *See United Stats v. Malik*, JKB-16-324, 2025 WL 2687413, *1 (D. Md. Sept. 19, 2025) (stating that compliance with the conditions of supervised release "is not a sufficient basis for early termination of supervised release"); *United States v. Farris*, No. 5:14-CR-008, 2021 WL 1588972, *2 (W.D. Va. Apr. 22, 2021) ("Neither the passage of time nor full compliance with the terms of supervised release are sufficient bases to warrant early termination.").

Defendant's age and health militate against any risk to public safety. But, the offenses here were extremely serious. Moreover, "Supervised release is not unduly burdensome. But, it is a very useful way to provide a defendant with structure and guidance, so as to ensure his continued success on the path to rehabilitation." *United States v. Bowles*, ELH-19-116, 2024 WL 2831499, *2 (D. Md. June 4, 2024).

It cannot go unsaid that this Court reduced defendant's life sentence to time served, *i.e.*, about twenty years. This was an act of extreme leniency. But, in doing so, I took into account the length of supervised release, which I regarded as essential to assure defendant's adherence to the law. I was also mindful that defendant did not object to the term of supervised release.

I do not rule out termination of supervised release down the road. But, the road traveled so far is quite short. In my view, termination of supervised release would be premature. This is because, in my view, supervision and structure are important, to assure defendant's continued adherence to the law and to provide adequate deterrence.

Therefore, I shall deny the Request, without prejudice. An Order follows, consistent with this Memorandum.

Date: November 10, 2025

/s/
Ellen Lipton Hollander
United States District Judge